UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID E. HOFFMAN JR.,

    *Plaintiff*,

  v.

STATE REGULATORY REGISTRY, LLC
(SRR) *et al.*,

    *Defendants*.

Civil Action No. 20-1493 (TJK)

## MEMORANDUM OPINION

David Hoffman Jr. is a mortgage broker who owns the trademark "LOANSMART®." He sues Defendants—also mortgage brokers—alleging that they are unlawfully infringing on his mark. Defendants have moved to dismiss for lack of personal jurisdiction. Because Hoffman has not met his burden of showing that the Court can exercise either general or specific jurisdiction over Defendants, the Court will grant Defendants' motions and dismiss the complaint for lack of personal jurisdiction.

**I.**    **Background**

Hoffman owns the trademark "LOANSMART®." ECF No. 12 ¶¶ 13–14. He has used that name for his mortgage services company since 1998 and formally registered the trademark a decade later. *Id.* Defendants Ian Jouett and Tracy Jouett own and operate a Colorado-based mortgage services company, LoanSmart LLC ("LoanSmart") (collectively, the "Jouett Defendants").[1] *Id.* ¶¶ 9–11; ECF No. 39-5 ¶¶ 1–3. Defendant Homayoun Ranjijifroody,

---

[1] Hoffman represents that the Jouett Defendants have recently amended LoanSmart's NMLS records to reflect a change in LoanSmart's name. ECF No. 43 at 3.

otherwise known as "Howie Jays," owns and operates LoanSmarter Inc., ("LoanSmarter") formerly called Mortgage Enterprise America Inc. (collectively, the "Jays Defendants"). ECF No. 12 ¶¶ 6–8.

As mortgage brokers, the Jouetts and Jays registered themselves and their companies on the Nationwide Multistate Licensing System & Registry (NMLS). ECF No. 12 ¶¶ 6–11. The NMLS is a legal system of record for mortgage licensing in participating States, including (as relevant here) Colorado and Florida. ECF No. 43 at 4; *see* ECF Nos. 42 at 9; 42-1 ¶ 3; 42-2 ¶ 6. The Conference of State Bank Supervisors—located in Washington, D.C.—controls and owns the NMLS. ECF No. 12 ¶ 11. The NMLS does not grant or deny license authority. ECF No. 43 at 4. Rather, it serves as a comprehensive database to "increase uniformity, reduce regulatory burden, enhance consumer protection, and reduce fraud." 12 U.S.C. § 5101. As part of its functions, the NMLS provides a web-based portal for consumers to "confirm" that a mortgage company can conduct business in their state. ECF No. 43 at 4. Registered companies may annually renew their NMLS registration. *Id.*

## II. Procedural History

Hoffman sued the five Defendants in June 2020 and amended his complaint in October 2020.[2] He alleges that Defendants unlawfully claim ownership and use brands on the NMLS that are confusingly similar to his "LOANSMART®" mark. ECF No. 12 ¶¶ 12–31. In so doing, he alleges, Defendants violate the Lanham Act and infringe on his trademark. *Id.* ¶¶ 32–59. Defendants moved to dismiss the Amended Complaint for lack of personal jurisdiction and the

---

[2] Hoffman originally named the NMLS as a defendant, ECF No. 1, but voluntarily dismissed it without prejudice. ECF No. 11. He filed the Amended Complaint that same day. *See* ECF No. 12.

2

Jays Defendants also moved to dismiss for improper venue.³  *See* ECF Nos. 25; 39.  Hoffman has opposed the motion and requested jurisdictional discovery on Jays.  *See* ECF Nos. 27; 43.  Hoffman also moved for a hearing on the motions to dismiss.  *See* ECF No. 46.

## III.     Legal Standard

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  The plaintiff bears "the burden of establishing a factual basis for the exercise of personal jurisdiction."  *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990).  Without jurisdictional discovery or an evidentiary hearing on jurisdiction, a plaintiff can carry her burden by making a prima facie showing of personal jurisdiction.  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (citation omitted).  To do so, she "must allege specific acts connecting [each] defendant with the forum."  *Second Amendment Found. v. Conf. of Mayors¸* 274 F.3d 521, 524 (D.C. Cir. 2001) (citation omitted).  In "establish[ing] a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility. . . . Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain."  *Mwani*, 417 F.3d at 7.  "When deciding personal jurisdiction without an evidentiary hearing . . . the court must resolve factual disputes in favor of the plaintiff."  *Livnat v. Palestinian Authority*, 851 F.3d 45, 57 (D.C.

---

³ Jays, proceeding pro se, filed his original motion to dismiss on behalf of himself and his company.  After Hoffman correctly pointed out that LoanSmarter could not proceed pro se, *see* ECF No. 27 at 7–8, the Jays Defendants obtained counsel who later replied to Hoffman's opposition to the Jays Defendants' motion to dismiss.  ECF Nos. 42; 43.  Though neither LoanSmarter or Jays refiled their original motion to dismiss through counsel, "an added measure of leniency is extended to pro se litigants with regard to procedural requirements."  *Plummer v. Safeway, Inc.*, 934 F. Supp. 2d 191, 197 (D.D.C. 2013).  For reasons of judicial economy and the absence of objection from Hoffman, the Court finds that LoanSmarter cured the lack-of-counsel deficiency in its original motion to dismiss.

Cir. 2017) (quotations omitted). But the Court need not accept inferences unsupported by the facts. *Id.*

IV.     **Analysis**

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.¸* 141 S. Ct. 1017, 1024 (2021). There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017). For the reasons explained below, the Court finds it can exercise neither type of personal jurisdiction over Defendants.

   A.     **General Jurisdiction**

A court may "exercise general jurisdiction only when a defendant is 'essentially at home' in" that court's jurisdiction. *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. "[T]he place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). A defendant may also be subject to general jurisdiction outside their paradigmatic forum so long as the defendant's contacts with that forum are "so substantial and of such a nature as to render [the defendant] at home in that State." *Id.* at 139 n.19.

The District of Columbia is not the paradigm forum for any Defendant who is an individual. Ian Jouett, Tracy Jouett, and Jays do not live in the District. Both Jouetts live in

4

Louviers, Colorado. ECF Nos. 39-3 ¶ 1; 39-4 ¶ 1. And Jays resides in Miami, Florida. ECF No. 42-1 ¶ 1. Hoffman gives no reason to believe these individual Defendants are otherwise domiciled in the District. Likewise, the District is not the paradigm forum for Defendants that are corporations, because none of them are incorporated in or have their principal place of business in the District. LoanSmart is incorporated under Colorado law and its headquarters are in Louviers, Colorado. ECF No. 39-5 ¶ 3. LoanSmarter was originally incorporated under the name Mortgage Enterprise America Inc. under Florida law and its principal place of business is Aventura, Florida. ECF No. 42-2 ¶¶ 3–5.

Hoffman mistakenly argues that the Court still has general jurisdiction over Defendants because they have "continuous and systematic engagement" with the NMLS. ECF No. 43 at 9. But "the proper inquiry 'is not whether a foreign [defendant's] in-forum contacts can be said to be in some sense continuous and systematic,' but rather whether the contacts 'are so continuous and systematic as to render [it] essentially at home in the forum State." *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 891 (D.C. Cir. 2021) (quoting *Daimler*, 571 U.S. at 138–39).

Hoffman fails to show how Defendants' registration in the NMLS meets this test and subjects them to general jurisdiction here. To start, the Jouetts do not conduct business in the District, derive income from the District, contract to supply services in the District, own or lease property in the District, employ anyone who resides in the District, have any bank accounts in the District, pay taxes to the District, or attend any trade shows in the District. ECF Nos. 39-3 ¶¶ 8–15; 39-4 ¶¶ 8–15. Neither does Jays. ECF No. 42-1 ¶¶ 8–15. These individual Defendants' only connection to the District is their registration and annual renewal of their mortgage broker NMLS IDs. Ian Jouett obtained his NMLS ID in 2010 and has renewed it every year from Colorado. ECF No. 39-4 ¶¶ 4–6. Tracy Jouett obtained her NMLS ID in 2013 and

5

has also renewed it every year from Colorado. ECF No. 39-3 ¶¶ 4–6. Jays obtained his NMLS ID in 2014 and has renewed it every year from Florida. ECF No. 42-1 ¶¶ 4–6. Even assuming registering with the NMLS and renewing their NMLS ID constitutes a "continuous and systematic" contact, Hoffman provides no argument to why such contact would render the individual defendants "essentially at home" in the District. *Erwin-Simpson*, 985 F.3d at 892.

The same analysis applies to Defendants that are corporations. As a mortgage broker, LoanSmart must register on the NMLS, which it did in 2013. ECF No. 39-5 ¶ 3–4. LoanSmart has since renewed its NMLS ID online every year from Colorado. *Id.* ¶ 7. Renewing its NMLS ID is its only contact with the NMLS. *Id.* ¶ 8. Like LoanSmart, LoanSmarter (and its predecessor, Mortgage Enterprise America Inc.) is a mortgage broker and must register with the NMLS. ECF No. 42-2 ¶ 6. LoanSmarter first received its NMLS ID in 2014 and has since renewed that same NMLS ID online every year from in Florida. *Id.* ¶¶ 6–10. LoanSmart does not engage in business activities, derive income, contract to supply services, own or lease any property, employ anyone, have bank accounts, or pay taxes in the District. ECF No. 39-5 ¶¶ 8–15. Neither does LoanSmarter. *See* ECF No. 42-2 ¶¶ 11–18. These contacts are hardly sufficient to comply with the Due Process clause.

The D.C. Circuit recently held that due process precluded personal jurisdiction over an airline that had no physical presence in the District of Columbia and did not fly its aircraft into the jurisdiction. *Erwin-Simpson*, 985 F.3d at 890. The Circuit rejected the plaintiff's argument that the ability to access the airline's website within the District supported general jurisdiction because there was no evidence or reason to believe that its online contacts were extensive enough to "render the corporation 'essentially at home' in the District." *Id.* at 891–92. As there, Defendants have no physical presence in the District of Columbia. And based on their extensive

6

representations, it appears that they have no contacts with the District, apart from their NMLS registrations. On this record, Defendants are not "at home" here.[4]

**B.    Specific Jurisdiction**

Due process also precludes the Court from asserting specific jurisdiction over Defendants. To establish specific jurisdiction, Hoffman "must show that jurisdiction is proper under both (1) the District of Columbia's long-arm statute and (2) the U.S. Constitution's Due Process Clause." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 110 (D.D.C. 2018). Hoffman has the burden to "identify which prong of the long-arm statute [he] is relying on as the basis for jurisdiction," *id.*, and he identifies D.C. Code § 13-423(a)(4).[5] *See* ECF No. 27 at 6–7 (reciting language from D.C. Code § 13-423(a)(4)); ECF No. 43 at 5–6. That provision grants specific jurisdiction based on a defendant's "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods

---

[4] Hoffman also claims that Jays marketed his ability to serve customers on the East Coast from "Maine to Florida" on the internet using the LoanSmarter name, and that Jays also used this name in connection with an internet-based application for customers. ECF No. 27 at 4, 8. But like the airline's website in *Erwin-Simpson,* and given the absence of other contacts here, none of that makes Jays or LoanSmarter "at home" in the District of Columbia.

[5] Defendants argue Hoffman did not identify the section of the District's long-arm statute on which he relies to establish personal jurisdiction because he did not cite the statute in his complaint. *See* ECF Nos. 39-1 at 5; 42 at 6. That argument goes nowhere; a plaintiff has "no obligation to make specific allegations relevant to personal jurisdiction in its complaint because lack of personal jurisdiction is an affirmative defense and so must be raised by the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).

used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4).[6]

Unlike other provisions of the District of Columbia long-arm statute, *see* D.C. Code § 13-423(a)(1), § 13-423(a)(4) is not "coextensive with the Constitution's due process requirements," *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000), and "may indeed stop short of the outer limit of the constitutional space" provided by the Due Process clause, *id.* (quoting *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (Bader Ginsburg, J.)). This means that "[e]ven when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause." *Id.* Here, because exercising personal jurisdiction would violate the Due Process Clause, the Court assumes (but does not decide) that Defendants met the requirements of § 13-423(a)(4) by having engaged in a "persistent course of conduct" in the District of Columbia, and proceeds to the constitutional analysis. *See World Wide Travel Inc. v. Travelmate US, Inc.*, 6 F. Supp. 3d 1, 9 (D.D.C. 2013) (declining to address § 13-423(a)(4) requirements because exercise of personal jurisdiction would violate the Due Process Clause).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "Although a nonresident's physical presence within the territorial jurisdiction of the

---

[6] Hoffman also argues jurisdiction in this court is proper over Jays under Federal Rule of Civil Procedure 4(k)(2) which allows a "federal court to exercise personal jurisdiction over a defendant (1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States." *Mwani*, 417 F.3d at 10. Jays concedes he is subject to jurisdiction in Florida because he is domiciled there. ECF No. 42 at 12. Rule 4(k)(2) therefore does not apply.

court is not required, the non resident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To satisfy due process, there must be sufficient "'minimum contacts' between the defendant and the forum 'such that he should reasonably anticipate being haled into court there." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (citations omitted). "That is, there must exist 'a relationship among the defendant, the forum, and the litigation' such that 'the defendant's suit-related conduct * * * create[s] a substantial connection with the forum." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020). To create such a connection "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Not every act will suffice for purposeful availment purposes because whether due process is satisfied turns on the "quality and nature" of the defendant's contact with the forum. *Thompson*, 734 F.3d at 1194. "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up).

Asserting specific personal jurisdiction over Defendants here would not comply with due process for several reasons. First, Defendants can hardly be said to have purposefully availed themselves of the "benefits and protections of [the District of Columbia's] laws." *Hanson*, 357 U.S. at 253. Defendants are not "deliberately exploit[ing]" the District's market. As already explained, they do not appear to have any contacts with the District other than through the NMLS, and there is no evidence they specifically seek out District residents as customers. *Cf.*

9

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (noting that a business could reasonably anticipate being haled into court when it continuously and deliberately targeted a jurisdiction's market). The only reason they register with the NMLS is because the laws of *other* jurisdictions—Colorado and Florida—require them to do so as a condition of doing business in those states. ECF Nos. 39-3 ¶ 3; 39-4 ¶ 3; 39-5 ¶ 4; 42 at 9; 42-1 ¶ 3; 42-2 ¶ 6.

Indeed, Defendants' registration with the NMLS has essentially nothing to do with the District of Columbia; their contact with this jurisdiction is entirely fortuitous. For example, if the Conference of State Bank Supervisors decided to move to neighboring Maryland or Virginia, it seems obvious the only contact Defendants have with the District would be no more. *Walden* 571 U.S. at 285 (minimum contacts analysis looks "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). In the end, the Conference's unilateral decision to locate in the District of Columbia cannot serve as a basis to subject Defendants to this Court's jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall¸* 466 U.S. 408, 417 (1984) ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *see also LaPointe v. Van Note*, No. 03-cv-2128 (RBW), ECF No. 41 at 8–9 (D.D.C. Nov. 9, 2004) (finding there was no specific jurisdiction when defendant's "contacts with the District stem[med] solely from its membership in [a local organization].").

Second, even if Defendants had deliberately chosen to register with the NMLS because of its connection to the District of Columbia, registering with the NMLS is not enough to create minimum contacts. Obtaining an NMLS ID is a "contact" in a similar way that "[e]ntering a contract with a forum resident clearly constitutes a 'contact' with that forum." *World Wide*

*Travel*, 6 F. Supp. 3d at 7. But "the Supreme Court has made . . . clear that a contract alone is not sufficient to establish [specific] personal jurisdiction over a non-resident defendant. . . . Something more is needed." *Id.* (citing *Burger King*, 471 U.S. at 478). But there is nothing more here. Hoffman's proffered basis for specific personal jurisdiction is Defendants' registration and annual renewal with the NMLS. If entering into a business contract is insufficient by itself to establish minimum contacts for specific jurisdiction, maintaining an entry in a District-based database also cannot establish minimum contacts to satisfy the Due Process Clause.

        **C.**        **Jurisdictional Discovery**

The Court will also deny Hoffman's request for jurisdictional discovery from Jays. "[J]urisdictional discovery is not a fishing expedition." *Triple Up Ltd. v. Youku Tudou Inc.*, No. 17-7033, 2018 WL 4440459, at *3 (D.C. Cir. July 17, 2018). A court may allow jurisdictional discovery when a plaintiff shows "a good faith belief that such discovery will enable [the plaintiff] to show that the court has personal jurisdiction over the defendant, as opposed to mere conjecture or speculation." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 108 (D.D.C. 2018) (quoting *FC Inv. Grp. v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093-94 (D.C. Cir. 2008)). The plaintiff must make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 47 (D.D.C. 2018) (quoting *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 130 n.16 (D.D.C. 2000)). Without such a showing, a court may deny the request. *See id.*

Hoffman neither explains in detail what discovery he seeks or how discovery could show personal jurisdiction over Jays. He merely states that he requires discovery "to determine the full extent of [Jays's] contacts with the District on the grounds that Plaintiff has demonstrated a level

11

of contact between [Jays] and at least one District-based entity, and more than likely more District consumers through the reach of the 'Loansmart' online application, from 'Maine to Florida,'" ECF No. 27 at 7, and that "discovery should be afforded Plaintiff to determine the full extent of contacts between [Jays] and the District," *id.* at 8.  But Hoffman's argument for jurisdictional discovery relies only on mere conjecture, and Defendants have unequivocally represented that they do not engage in any business activities and derive no income from customers in the District of Columbia.  Further, Hoffman provides no specific discovery requests for the Court to grant.  Thus, his request for discovery will be denied.

**V.      Conclusion**

For all these reasons, the Court will grant Defendants' motions to dismiss for lack of jurisdiction and deny Hoffman's motion for a hearing as moot.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 24, 2021